IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In Re: | § | Case No. 20-35707-H4-13 |
| | § | |
| **Manuel Francisco Chavez** | § | |
| | § | |
| Debtor | § | Chapter 13 |

### DEBTOR'S OBJECTION TO CLAIM NO. 5 OF U.S. BANK TRUST, N.A.

**THIS IS AN OBJECTION TO YOUR CLAIM. THIS OBJECTION ASKS THE COURT TO DISALLOW THE CLAIM THAT YOU FILED IN THIS BANKRUPTCY CASE. IF YOU DO NOT FILE A RESPONSE WITHIN 30 DAYS AFTER THE OBJECTION WAS SERVED ON YOU, YOUR CLAIM MAY BE DISALLOWED WITHOUT A HEARING.**

**THERE WILL BE A HEARING ON THIS MATTER ON 5/20/2021 AT 10:00 AM ON THE 4TH FLOOR, COURTROOM 401, UNITED STATES BANKRUPTCY COURT, 515 RUSK ST., HOUSTON, TEXAS 77002.**

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

**TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:**

  **COMES NOW Manuel Francisco Chavez** (the "Debtor") and files this *Objection to Claim No. 5 of U.S. Bank Trust, N.A.* and would show the Court the following:

### Procedural History

1. On 10/7/2002, Debtor purchased his principal residence located at 810 Greystone Drive, Channelview, Texas 77530 (the "Property"). The Property was secured a first and second notes and deeds of trust (collectively, the "Mortgage") in favor of ESI Mortgage, L.P. Thereafter, the Mortgage was assigned and/or transferred to subsequent holders.

2. On 5/27/2010, after falling delinquent on the Mortgage payments, Debtor filed a Chapter 13 bankruptcy case, Case No 10-34336, which provided for both the ongoing monthly payments and arrears on the Mortgage. However, on 10/5/2020, due to Debtor being unable to maintain his plan payments after his income both decreased and became variable, that case was dismissed.

3. On 12/6/2010, Debtor filed a Chapter 13 bankruptcy case, Case No 10-40981, which also provided for both the ongoing monthly payments and arrears on the Mortgage. Debtor fell short on completing that case by just six months when it was dismissed on 6/30/2015.

4. On 7/13/2016, Debtor obtained a modification of the Mortgage bringing his obligations current.

5. On 6/2/2017, after falling delinquent on the Mortgage payments, Debtor filed a Chapter 13 bankruptcy case, Case No 17-33360, which provided for both the ongoing monthly payments and arrears on the Mortgage. On 8/26/2017, mere days after the first confirmation hearing in that case, Hurricane Harvey made landfall in Texas at peak intensity eventually taking over 100 lives and inflicting $125 billion in economic damage. Due to the resulting economic downturn, Debtor, a truck driver, was unable to maintain his income and that case was dismissed on 1/8/2018.

6. On 3/5/2018, Debtor filed a Chapter 13 bankruptcy case, Case No 18-31024 (the "Previous Case"), which provided for both the ongoing monthly payments and arrears on the Mortgage. Debtor was able to maintain his payments for some time until he lost major trucking contracts and had had health issues leading to a reduction of income and dismissal of that case on 10/7/2019.

7. Although Debtor was unable to complete any of those cases, his performance is nevertheless notable. Pursuant to the Chapter 13 Trustees' records[1], in the approximate 84 months those cases were active, Debtor paid in a total of $75,172.92. Of that amount, the Trustees disbursed a total of $59,021.70 to the Mortgage holder – $44,889.44 representing 70 ongoing monthly payments under the Mortgage and $14,132.26 towards Mortgage arrears.

---

[1] William E. Heitkamp served as Trustee in Case Nos. 10-34336 and 10-40981. David G. Peake served as Trustee in Case Nos. 17-3360 and 18-31024.

8. Moreover, it is also notable that despite Debtor's circumstances from the filing of his first case on 5/27/2010 through the filing of this case – *a period of over 10 years peppered throughout with numerous devastating weather events, national and state declared disasters, a nearly complete and catastrophic collapse of the Texas power grid, and an ongoing global pandemic that has caused the largest global recession since the Great Depression* – Debtor was able to fund those cases to the extent that *the Mortgage holder received approximately 83% of the contractual payments that came due while those cases were active*. In the Previous Case alone, the Trustee disbursed a total of $11,407.08 to the Mortgage holder representing ongoing monthly payments that came due from 4/2018 through 8/2019.

9. Several months after the dismissal of the Previous Case, however, Debtor's misfortunes, and those of similarly situated debtors, were further exacerbated by the global COVID-19 pandemic causing.

## The Current Case

10. On 11/30/2020, Debtor filed this case.

11. U.S. Bank Trust, N.A. (the "Creditor") is the current Mortgage holder.

12. On 1/11/2021, having yet to file a claim and even before the meeting of creditors, the Creditor filed its *Motion for Relief from Stay* (Docket No. 18) (the "Motion") seeking termination of the automatic stay as to itself so it may proceed with its state court rights against the Property. The Motion alleges, *inter alia*, that Debtor failed to make *30 payments* since 8/2018 and was in default in the amount of $25,034.88, that "cause" exist to terminate the stay due to Debtor's failure to make payments for an "extended period of time" – specifically "more than two years", and that the filing of this case was "part of a scheme" – an "intentional artful plot to delay, hinder, and defraud creditors" – that involves "the repeated filing of bankruptcy

3

petitions".

13. On 1/14/2021, despite Creditor not having filed a claim, Debtor filed a proposed plan which not only provided for the ongoing monthly payments of $645.89 based on the payment from in the Previous Case but also provided for arrears not just in deference to the amount of Debtor's default alleged in the Motion – $25,034.88 – but beyond – $30,000.00 – out of both an overabundance of precaution and in good faith pending the Creditor filing a claim.

14. On 1/15/2021, Creditor filed secured Proof of Claim No. 5 (the "Claim") alleging a total amount of due of $73,745.31, arrears in the amount of $24,295.32, and an ongoing monthly payment of $699.03.

15. On 2/2/2021, Debtor filed a response to the Motion (Docket No. 32) contending, *inter alia*, that the Motion and Claim contained different amounts necessary to cure any alleged default as of the date of the petition[2] and that Debtor did not fail to make payments for an extended period of time was not than two years in arrears on the Mortgage *specifically* referencing payments disbursed by the Trustee to the Creditor during the Previous Case.

16. On 2/3/2021, Debtor's counsel corresponded with Creditor's counsel regarding the Motion indicating that Debtor's 1/14/2021 proposed plan provided for the Claim, that Debtor made his first payment under said plan, provided Creditor's counsel with proof of such payment, and requested that Creditor withdraw the Motion.  Debtor's counsel additionally raised concerns regarding the allegations in the Motion that Debtor failed to make payments since 8/2018 and explained that the Trustee's records reflected disbursements to Creditor between 7/2018 through 8/2019 (reflecting ongoing payments due from 4/2018 through 8/2019), provided Creditor's counsel a copy of the Trustee's records confirming same, noted that those payments did not

---

[2] The Motion alleges payments due of $25,034.88 while the Claim alleges $24,295.32.

appear to be credited in the Claim, and requested an explanation as to where those payments were applied.

17. Creditor's counsel responded shortly thereafter wholly dismissing Debtor's concerns alleging that in the Previous Case, Debtor was delinquent on payments beginning in 2/2017 (despite the fact that the *confirmed plan* in the Previous Case clearly provided for ongoing monthly payments beginning in 4/2018, that the Trustee disbursed such payments in accordance with that plan, and that the Mortgage holder did not object to or otherwise sought to intervene in the confirmation of that plan and was accordingly not only bound by such plan but that accepted such payments as provided for in that plan without objection) and that a "prior servicer" properly credited payments received from the Trustee in the Previous Case.

18. On 2/4/2021, Debtor filed an amended proposed plan which matched the amounts set forth in the Claim (Docket No. 33).

19. Despite Debtor's counsel's efforts to resolve the concerns raised in the Motion with Creditor's counsel thereafter, the Creditor failed to respond in any meaningful manner.

20. On 2/22/2021, Debtor filed another amended proposed plan but it did not alter the treatment of the Claim.

21. Debtor's counsel then learned that Creditor had retain local counsel and after discussing the allegations raised in the Motion and Debtor's response thereto with him, the parties agreed to request a continuance of the hearing to discuss a resolution of the Motion.

22. On 2/23/2021, at the initial hearing on the Motion, upon the parties' request, the Court the hearing to 3/23/2021.

23. Subsequently, despite the very purpose of continuing the initial hearing on the Motion, Creditor's counsel did not respond to Debtor's counsel's requests to discuss a potential

resolution. After again contacting Creditor's local counsel, he indicated that Creditor's counsel would be in touch with Debtor's counsel yet that did not occur.

24. On 3/15/2021, the Court held a confirmation hearing. Despite Creditor's allegations in the Motion that Debtor failed to make payments for more than two years constituting cause to allow it to put a struggling Debtor out of his home and that Debtor had somehow engaged in scheme or intentional artful plot to delay, hinder, and defraud creditors, neither Creditor nor any other such allegedly defrauded creditor objected to or otherwise sought to intervene in the confirmation of Debtor's plan nor did it even appear at the hearing. Accordingly, the Court confirmed Debtor's 2/22/2021 plan which provided for the Claim (Docket No. 42).

25. On 3/22/2021, the day prior to the continued hearing on the Motion and still not having received any responses from Creditor's counsel, Debtor's counsel then corresponded with Creditor's counsel setting forth the status of various discussions between the parties regarding the Motion, the purpose of continuing the initial hearing, the lack of any meaningful response, and inquired as to Creditor's intentions at the following day's hearing.

26. Creditor's counsel responded shortly thereafter and indicated that Creditor had yet to respond to requests to resolve the motion or indicated its intentions otherwise (despite the fact that 70 days having elapsed since it filed *its own* Motion), asked if Debtor would agree to a yet another continuance to discuss a resolution (despite the fact that no prior meaningful attempts to do so whatsoever after the first continuance), and requested that Debtor's counsel provide them "information" regarding Debtor's contentions in his response to the Motion that Trustee disbursed payments to the Creditor during the Previous Case (despite the facts that Creditor having received those disbursements pursuant to the Trustee's records and despite the fact that this information was already provided to Creditor's counsel on 2/3/2021, 47 days prior, in the

6

form of the Trustee's own records).

27. On 3/23/2021, shortly before the time of the continued hearing, Creditor's local counsel contacted Debtor's counsel to discuss the hearing which included requesting a further continuance. Debtor's counsel raised concerns regarding the Creditor's failure to engage in any meaningful discussions to resolve the Motion, the disbursements the Trustee made to the Creditor in the Previous Case which contradict both the allegations in the Motion and which Creditor failed to credit in its Claim, and the fact that the Court had already confirmed Debtor's plan which provided for the Claim. As with every other discussion regarding these matters, no progress could be made and Debtor's counsel refused to agree to a further continuance.

28. The Motion was then called for hearing at which time Debtor's counsel advised the Court of the status of the parties' discussions, raised concerns regarding Creditor's failure to credit disbursements it received from the Trustee in the Previous Case, that Creditor was attempting to move forward on the Motion in bad faith having filed no witness or exhibit list as required under Local Rules, and that the Court had already confirmed Debtor's proposed plan without objection or intervention by Creditor, and that there was no basis to terminate the stay. After hearing comments from Creditor's local counsel, the Court denied the Motion.

29. Since then, and despite being provided information the Creditor requested, despite the Trustee's uncontested records of disbursements to the Mortgage holder in the Previous Case, and despite numerous pleas to address the amount of the Claim, Creditor has steadfastly refused to take any course of action much less communicate with Debtor's counsel.

30. Based on the foregoing, and upon information and belief, Creditor made misrepresentations to the Court regarding Debtor's payment history and amounts due under the Mortgage in its Motion which were supported by an affidavit attached to the Motion and such

misrepresentations continued when it filed its Claim. Debtor contends such misrepresentations call into question the veracity of not only the Creditor statements to the Court but its records and the records of prior servicers and/or Mortgage holders.

## Objection to Clam

31. Debtor objects to the Claim and requests that the Court disallow portions of the Claim because the debt made the basis of the Claim is unenforceable against the Debtor or property of the Debtor under any agreement or applicable law pursuant to 11 U.S.C. § 502(b)(1).

32. Specifically, Debtor objects to the amount of the Claim because the Creditor failed to credit payments it received from the Trustee in the Previous Case and as a result, *at minimum*, the principal balance and interest due are overstated.

33. Additionally, as a result of such overstatements, Debtor is unable to determine if the Creditor properly analyzed the Mortgage's escrow account and whether the escrow deficiency and projected escrow shortage set forth in the Claim are accurate. This is especially the case since Creditor's payment history wholly fails to take into account a Fed. R. Bankr. P. 3002.1(b) notice of payment change filed in the Previous Case which adjusted the escrow portion of ongoing monthly payments. *Even if Creditor's escrow analysis is taken at face value*, the projected escrow shortage is substantially overstated.

34. Debtor further objects to the fees and costs due as set forth in the Claim as they include attorneys' fees that are excessive, unreasonable, and not necessary. Pursuant to the Creditor's pay history, in a span of 375 days beginning on 10/4/2019, *three days before the Previous Case was dismissed,* through 10/13/2020, Creditor alleges it incurred a total $3,946.56 in attorneys' fees or approximately $10.52 per each such day. The Claim includes no information or documents setting forth the reason or the basis of any such fees.

35. In support of such allegations, Debtor' declaration is attached hereto as **Exhibit "A"**.

36. Debtor further objects to the Claim because it is allegedly based on a writing and fails to include information or documentation required by Fed. R. Bankr. P. 3001(c). Specifically, the Creditor failed to include an accurate payment history and consequently failed to include an accurate escrow analysis and failed to include any reason or basis for the excessive, unreasonable, and unnecessary attorneys' fees it seeks.

37. Debtor requests that the Court preclude the Creditor from presenting any such information or documentation, in any form, as evidence in any contested matter, including this Objection, or adversary proceeding in this case pursuant to Fed. R. Bankr. P. 3001(c)(2)(D)(i).

38. Debtor further requests that the Court award the undersigned firm reasonable and necessary attorneys' fees and costs caused by Creditor's failure to provide such information or documentation pursuant to Fed. R. Bankr. P. 3001(c)(2)(D)(ii). Had Creditor accurately filed the Claim, included information or documentation to support the Claim, or at minimum communicated with Debtor's counsel regarding Debtor's concerns regarding the Claim, this Objection would not be necessary.

**WHEREFORE**, Debtor requests that the Court sustain this Objection and grant Debtor such other relief as is just.

*[signature page follows]*

Respectfully submitted,

**GUZMAN LAW FIRM**

/s/ Mayur M. Patel
_____

**Eloise A. Guzman**
State Bar No. 08654570; Fed ID 7685
eloise@guzmanbk.com
**Mayur M. Patel**
State Bar No. 24043863; Fed ID 573995
mayur@guzmanbk.com
8225 Gulf Freeway
Houston, Texas 77017
(713) 378-9900 Phone
(713) 378-9977 Fax
*Attorneys for the Debtor*

## CERTIFICATE OF SERVICE

A true and correct copy of the foregoing was served on the following on 04/14/2021 and the parties on the attached list, if any:

Debtor via U.S. Mail
Manuel Francisco Chavez
810 Greystone St.
Channelview, TX   77530

Creditor via U.S. Mail
U.S. Bank Trust, N.A.
c/o SN Servicing Corporation
323 5th St.
Eureka, CA   95501

Creditor's counsel via ECF/CM
Ghidotti Berger
600 E. John Carpenter Fwy., Ste. 175
Irving, TX   75062
bknotifications@ghidottiberger.com

Via ECF/CM
David G. Peake, Chapter 13 Trustee
U.S. Trustee

*/s/ Mayur M. Patel*
_____

Eloise A. Guzman
Mayur M. Patel

10